UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

FRIENDS OF THE WILD SWAN, INC.,
a Montana nonprofit corporation;
ALLIANCE FOR THE WILD ROCKIES,
INC., a Montana nonprofit corporation,

                Plaintiffs,

     v.

ROBYN THORSON, Pacific Region Director,
U.S. Fish and Wildlife Service; U.S. FISH AND
WILDLIFE SERVICE, an agency of the U.S.
Department of the Interior; S.M.R. JEWELL,
Secretary, U.S. Department of the Interior, U.S.
DEPARTMENT OF THE INTERIOR, a federal
executive department of the United States,

                Defendants.

Case No.  3:16-cv-681-AC

FINDINGS AND
RECOMMENDATION

_____

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiffs, Friends of the Wild Swan, Inc., and Alliance for the Wild Rockies, Inc.

(collectively "Plaintiffs"), filed this lawsuit seeking judicial review of the Recovery Plan for the Coterminous United States Population of Bull Trout (the "Plan") issued by the United States Fish and Wildlife Service (the "Service") and the United States Department of Interior (the "Department").  Defendants Robyn Thorson, Pacific Region Director of the Service ("Thorson"), S. M. R. Jewell, Secretary of the Department ("Jewell"), the Service, and the Department (collectively "Defendants") move to dismiss the lawsuit for lack of subject-matter jurisdiction or failure to state a claim.  Specifically, Defendants contend Plaintiffs challenge only discretionary aspects of the Plan and, consequently, are unable to state a claim under either the Endangered Species Act, 16 U.S.C. §§ 1531-1544 (2016) (the "Act"), or the Administrative Procedure Act, 5 U.S.C. §§ 551-559 (2016) (the "APA").  Defendants alternatively argue the Plan is not a final agency action and, therefore, not subject to judicial review under the APA.

The court finds the content of the Plan is discretionary while the requirement to incorporate specific items to the maximum extent practicable is a mandatory duty and that the Plan was not a final agency action.  Plaintiffs' claims challenge the content of the Plan and are not actionable under the citizen-suit provision of the Act, and Plaintiffs do not have a cause of action under the APA.  Accordingly, the court lacks subject-matter jurisdiction over Plaintiffs' claims and Defendants' motion to dismiss should be granted.

*Background*

The Act mandates the conservation of "ecosystems upon which endangered species and threatened species depend."  16 U.S.C. § 1531(b).  The Act defines "conservation" to mean "the use of all methods and procedures which are necessary to bring any endangered or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary" and lists

some of the methods and procedures available to further such conservation.   16 U.S.C. § 1532(3).

A species is entitled to protection under the Act only when it has been listed as endangered or threatened.  The Act directs the Secretary of the Interior ("Secretary") to determine which species to protect by considering five factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

28 U.S.C. § 1533(a)(1).  The Secretary's determination is made "solely on the basis of the best scientific and commercial data available" and any one factor will support listing a species as endangered or threatened.  28 U. S. C.§§ 1533(a)(1), 1533(b).

The Secretary listed the Columbia River Basin and Klamath populations of bull trout as threatened and endangered, respectively, on June 10, 1998.  (Compl. ¶ 19.)  Subsequently, the Secretary listed the Jarbidge population of bull trout as threatened on April 8, 1999, and the Coastal-Puget Sound and St. Mary-Belly River populations as threatened on November 1, 1999.  (Compl. ¶ 20.)

Once a species has been listed under the Act, a number of protective provisions are triggered, including 28 U.S.C. § 1533(f), which provides:

(1) The Secretary shall develop and implement plans (hereinafter in this subsection referred to as "recovery plans") for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless he finds that such a plan will not promote the conservation of the species.  The Secretary, in

developing and implementing recovery plans, shall, to the maximum extent practicable –

> (A) give priority to those endangered species or threatened species, without regard to taxonomic classification, that are most likely to benefit from such plans, particularly those species that are, or may be, in conflict with construction and other development projects or other forms of economic activity;
>
> (B) incorporate in each plan –
>
>> (i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;
>>
>> (ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and
>>
>> (iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

(2) The Secretary, in developing and implementing recovery plans, may procure the services of appropriate public and private agencies and institutions, and other qualified persons. Recovery teams appointed pursuant to this subsection shall not be subject to the Federal Advisory Committee Act.

(3) The Secretary shall report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and implement recovery plans for all species listed pursuant to this section and on the status of all species for which such plans have been developed.
(4) The Secretary shall, prior to final approval of a new or revised recovery plan, provide public notice and an opportunity for public review and comment on such plan. The Secretary shall consider all information presented during the public comment period prior to approval of the plan.
(5) Each Federal agency shall, prior to implementation of a new or revised recovery plan, consider all information presented during the public comment period under paragraph (4).

The Service and the Department (collectively the "Agencies") released the Plan under §1533(f) for

the conservation and survival of the bull trout on September 9, 2015.  (Compl., ECF No. 1, ¶ 36.)

Plaintiffs filed their complaint on April 19, 2016, (the "Complaint) alleging Defendants violated the Act by approving a legally deficient Plan.  Plaintiffs' first eight claims allege various violations of the Act.  In their Ninth Claim for Relief, Plaintiffs alternatively allege Defendants' actions were arbitrary, capricious, or an abuse of discretion and, consequently, actionable under the APA.  Defendants move to dismiss the Complaint for lack of subject-matter jurisdiction or failure to state a claim under Rule 12(b) of the Federal Rules of Civil Procedure.

*Legal Standard*

I.  Lack of Subject-Matter Jurisdiction – Rule 12(b)(1)

The federal district courts are courts of limited jurisdiction.  *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 552 (2005).  Because subject-matter jurisdiction "involves a court's power to hear a case, [it] can never be forfeited or waived."  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Accordingly, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A motion to dismiss for lack of subject-matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)").  *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039-40 (9th Cir. 2003).  When a defendant challenges a complaint on its face, arguing the allegations in the complaint are insufficient to invoke federal jurisdiction, the court assumes the allegations to be true and draws all reasonable inferences in plaintiff's favor. *Wolfe v. Strankman*, 391 F.3d 358, 362 (9th Cir. 2004).  The court will grant a Rule 12(b)(1) motion to dismiss if the complaint fails to allege facts sufficient to establish subject-matter

jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The party asserting jurisdiction bears the burden of establishing it exists in a given case and must overcome the presumption a cause lies outside the district court's limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

II. Failure to State Claim – Rule 12(b)(6)

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (2016). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909 at *4 (9th Cir. Sept. 12, 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

*Discussion*

I.  The Act

In their first eight claims for relief, Plaintiffs allege Defendants failed to comply with §
1533(f) of the Act in creating and approving the Plan.  Plaintiffs ask the court to declare Defendants
in violation of the Act and order them to "promptly develop and implement a lawfully adequate
recovery plan for listed populations of the bull trout." (Compl. at 25.)  Plaintiffs claim entitlement
to such relief under the citizen-suit provision of the Act found at 16 U.S.C. § 1540(g) which
provides, in pertinent part, "any person may commence a civil suit on his own behalf . . . against the
Secretary where there is alleged a failure of the Secretary to perform any act or duty under section
1533 of this title which is not discretionary with the Secretary."  Defendants assert the conduct about
which Plaintiffs complain is discretionary.   Consequently, Defendants contend Plaintiffs lack
authority to seek relief for such conduct under the citizen-suit provision of the Act.

Pursuant to the doctrine of sovereign immunity, "the United States may not be sued without
its consent."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Section 1540(g), the provision
of the Act granting "any person" standing to sue the Secretary in federal district courts, effectively
operates as a waiver of Defendants' sovereign immunity.  As such, it must be narrowly construed
against persons seeking to sue the sovereign.  *See Tucson Airport Auth. v. General Dynamics Corp.*,
136 F.3d 641, 644 (9th Cir. 1988)("waivers of sovereign immunity are to be strictly construed.").

Few courts have considered the degree of discretion afforded the Agencies under the Act with
regard specifically to the content of recovery plans.  However, several courts, including the Ninth
Circuit and the United States Supreme Court, have considered and construed similar language in
both the Act and other statutes.

Particularly instructive here is the Ninth Circuit's discussion and application of the citizen-suit provision of the Clean Water Act (the CWA") in *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349 (9th Cir. 1978). The citizen-suit provision of the CWA is, to the extent relevant here, virtually identical to that found in the Act. Under the CWA, "any person may commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator. . . ." 42 U.S.C. §7604(a)(2) (2016).

The court considered the express language of the citizen-suit provision and the legislative history supporting the inclusion of the phrase "which is not discretionary with the Administrator," and concluded "the non-discretionary duty requirement imposed by [42 U.S.C. §7604] must be read in light of the Congressional intent to use this phrase to limit the number of citizen suits which could be brought against the Administrator and to lessen the disruption of the Act's complex administrative process." *Kennecott*, 572 F.2d at 1354. More specifically, the court adopted the reasoning set forth in *Wisconsin Envtl. Decade, Inc. v. Wisconsin Power and Light Co.*, 395 F. Supp. 313 (W. D. Wis. 1975), that 42 U.S.C. §7604 "'was intended to provide relief only in a narrowly-defined class of situations in which the Administrator failed to perform a mandatory function; it was not designed to permit review of the performance of those functions, nor to permit the court to direct the manner in which any discretion given the Administrator in the performance of those functions should be exercised.'" *Kennecott*, 572 F.2d at 1355 (quoting *Wisconsin*, 395 F. Supp. at 321).

The court then addressed the plaintiff's request for a preliminary injunction requiring the administrator to approve a revision and related variance to a state implementation plan under 42 U.S.C. § 7410(a)(3). *Kennecott*, 572 F.2d at 1351-52. At the time, 42 U.S.C. § 7410(a)(3) provided:

"'[t]he Administrator shall approve any revision of an implementation plan applicable to an air quality control region if he determines that it meets the requirements of paragraph (2) and has been adopted by the State after reasonable notice and public hearings.'" *Kennecott*, 572 F.2d at 1354 (quoting 42 U.S.C. § 7410(a)(3).) The referenced "paragraph (2)" required the administrator to "approve a state plan which provides for the timely attainment and subsequent maintenance of ambient air standards, and which also satisfies that sections other general requirements." *Kennecott*, 572 F.2d at 1354 (quoting *Train v. Nat. Res. Def. Council*, 421 U.S. 60, 80 (1975).

The Ninth Circuit acknowledged "the Administrator has a non-discretionary duty to make a decision regarding the state revision" but cautioned the Administrator "retained a good deal of discretion as to the content of that decision." *Kennecott*, 572 F.2d at 1354. The court explained one of the "other general requirements" referenced in paragraph (2) was the inclusion of "emission limitations" which required "the air quality standards be met to the extent feasible by constant emission controls" and noted "[t]he determination whether a particular form of emission control is feasible is obviously a matter requiring an exercise of the Administrator's discretion." *Id*. The Administrator was not bound by the feasibility studies of the state but rather, was required to determine whether the proposed revision met all of the requirements of paragraph (2) before determining if approval was appropriate. *Id*. "Determining whether such is the case requires the fusion of technical knowledge and skills with judgment, which is the hallmark of duties which are discretionary." *Id*. Once this analysis has occurred, the Administrator has a non-discretionary duty to act in accordance with this determination. *Id*. at 1355.

The Ninth Circuit distinguished between the obligation to act and the process or decisions to be made prior to fulfilling such obligation. It recognized a "distinction . . . between the

Administrator's duty to decide whether Nevada's revised [state implementation plan] meets all the requirements of [paragraph 2] and his duty to decide in a particular manner. The former is not discretionary, the latter is." *Id*. The court held "the Administrator does not have a mandatory duty to approve either the revision or the variance" and to classify that decision as "not discretionary" to create jurisdiction under the citizen-suit provision "is to stand words on their head in an effort to provide jurisdiction when Congress intended that none exist." *Id*. at 1354.

The United States Supreme Court considered the Secretary's duty to designate critical habitat for species identified as threatened or endangered under the Act in *Bennett v. Spear*, 520 U.S. 154 (1977). The plaintiffs filed a lawsuit under the citizen-suit provision of the Act and the APA alleging, in part, the government violated § 1533(b)(2) when it imposed minimum water levels for the specific Gerber reservoirs in a biological opinion addressing the long-term operation of the Klamath Project. *Id*. at 157-59. The plaintiffs asserted the imposition of minimum water levels in the biological opinion constituted an implicit designation of critical habitat for endangered suckers that failed to consider the economic impact on the plaintiffs' use of the reservoirs and related waterways as the primary source of their irrigation water. *Id*. at 160. The plaintiffs also noted the absence of evidence the suckers in the reservoirs have declined, are declining, or will decline as a result of the Klamath Project or that the water level restrictions proposed would have any beneficial effect on the suckers. *Id*.

The government argued the duty to designate critical habitat under the Act is discretionary and, therefore, not enforceable under the citizen-suit provision. *Id*. at 172. The relevant language, found in 16 U.S.C. § 1533(b)(2), provides:

The Secretary shall designate critical habitat, and make revisions thereto, under

subsection (a)(3)[1] of this section on the basis of the best scientific data available and
after taking into consideration the economic impact, the impact on national security,
and any other relevant impact, of specifying any particular area as critical habitat.
The Secretary may exclude any area from critical habitat if he determines that the
benefits of such exclusion outweigh the benefits of specifying such area as part of the
critical habitat, unless he determines, based on the best scientific and commercial
data available, that the failure to designate such area as critical habitat will result in
the extinction of the specifics concerned.

The Court found the terms of the first sentence of this statute to be "plainly those of obligation rather than discretion" with regard to the items to be considered, such as economic or any other relevant impact and best scientific data available, even if the second sentence limited review of the Secretary's ultimate decision to abuse of discretion. *Bennett*, 520 U.S. at 172. The court explained "[i]t is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking." *Id*. Because the plaintiffs complained about the government's failure to consider the economic impact of the minimum water level, or base its decision on the best commercially or scientifically evidence available, the plaintiffs had stated a viable claim under the citizen-suit provision of the Act for failure to perform a non-discretionary act or duty under §1533. *Id*.

A California district court relied on *Bennett* in holding the term "shall" in § 1533(f) requires the Secretary to "either issue a recovery plan or determine that a recovery plan will not promote the conservation of the species, and does not permit the [Secretary] the discretion to do neither." *Center for Biological Diversity v. Bureau of Land Mgmt.*, 35 F. Supp. 3d 1137, 1151 (N. D. Cal. 2014).

---

[1] "The Secretary, by regulation promulgated in accordance with subsection (b) of this section and to the maximum extent prudent and determinable . . . shall, concurrently with making a determination under paragraph (1) that a species is an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat . . . ." 16 U.S.C. § 1533(a)(3)(A)(i).

The court found in the absence of an express determination a recovery plan would not promote conservation, the Secretary had an obligation to issue a recovery plan for a listed species. *Id*. The court did not consider whether the contents of such plan were discretionary or if the court had jurisdiction under the citizen-suit provision of the Act.

On the other hand, Judge Coffin found the language in §1533 authorizing the Secretary to establish a priority system for developing and implementing recovery plans "allows the Secretary broad discretion to allocate scarce resources to those species that he or she determines would most likely benefit from development of a recovery plan." *Oregon Nat. Res. Council v. Turner*, 863 F. Supp. 1277, 1283 (D. Or. 1994). The Act provides "[t]he Secretary, in developing and implementing recovery plans, shall, to the maximum extent practicable[,] give priority to those endangered species or threatened species . . . that are most likely to benefit from such plans." 16 U.S.C. § 1533(f)(1)(A). Judge Coffin found this language afforded the Secretary discretion on when to develop and implement a recovery plan even when such plans are required under the Act. *Turner*, 863 F. Supp. at 1283. Judge Coffin addressed the language in the context of the plaintiff's right to attorney fees under 16 U.S.C. § 1540(g)(4), not in a plaintiff's right to pursue a citizen suit based on challenges to a recovery plan.

The District of Arizona addressed a challenge to a recovery plan intended to benefit the humpback chub in *Grand Canyon Trust v. Norton*, No. 04-CV-636PHXFJM, 2006 WL 167560 (D. Az. Jan 18, 2006) and distinguished between a general claim the recovery plan did not provide for the conservation and survival of the chub, and a specific claim the plan failed to incorporate the estimates of time and cost required by 16 U.S.C. § 1533(f)(1)(B)(iii). With regard to the general claim, the court relied heavily on *Kennecott* in finding the citizen-suit provision "does not create a

cause of action to challenge the substance of a recovery plan, and therefore, we lack jurisdiction to

hear this claim." *Norton*, 2006 WL 167560, at *2.  The court reasoned:

> By stating that the Secretary "shall" act, the [Act] creates a non-discretionary duty to
> develop and implement plans for the conservation and survival of endangered
> species.  However, the substance of the plan is left to the discretion of the Secretary.
> Conservation is defined broadly and provides for a wide range of actions that could
> be used to conserve various species.  Determining how to provide for the
> conservation and survival of the humpback chub "requires the fusion of technical
> knowledge and skills with judgment which is the hallmark of duties which are
> discretionary."
>
> *    *    *
>
> The citizen suit provision, and waivers of federal sovereign immunity in general,
> must be strictly construed.  In contrast, plaintiffs' argument would substantially
> expand the scope of the citizen suit provision.  Any person would be able to
> challenge the substance of recovery plans by merely alleging that the Secretary's plan
> is not only poor, but likely to lead to the extinction of a species.
>
> Accordingly, we conclude that no cause of action arises under 16 U.S.C.
> §1540(g)(1)(C) for the failure to provide for the conservation and survival of the
> humpback chub, in contrast to the development and implementation of a plan to
> conserve them.

*Id*. at *2-*3.

The court did consider the specific claim regarding the time and cost estimates referenced

in §1533(f)(1)(B).  The court did not distinguish between the Secretary's discretion to determine the

substance of a recovery plan and the need to incorporate time and cost estimates into such plan.

Nevertheless, the court noted the Secretary is obligated to include such estimates "to the maximum

extent practicable."  *Norton*, 2006 WL 167560, at *5.  Because the defendants did not argue it was

not practicable to include the estimates in the recovery plan, the court found they were not excused

from this requirement.  *Id*.  The court concluded "Defendants failed to comply with their non-

discretionary duty to provide time and cost estimates pursuant to 16 U.S.C. § 1533(f)(1)(B)(iii)" and

granted summary judgment for plaintiff on the claim, thereby impliedly, if not expressly, finding jurisdiction under the citizen-suit provision of the Act.  *Id*.

At least two courts have clearly, and unequivocally, held the contents of a recovery plan required under § 1533(f)(1) are discretionary.  In *Morrill v. Lujan*, 802 F. Supp. 424, 433 (S. D. Ala. 1992), the Southern District of Alabama assumed, for the purpose of argument, the adoption of a recovery plan was mandatory under the Act but found, nevertheless, the express language in § 1533(f)(1) made the contents of the plan discretionary.  *Id*.  The court rejected the plaintiff's attempt to force the Secretary to issue a recovery plan based on allegations the existing plan was insufficient explaining:

> [i]t is undisputed that the Secretary has already developed a recovery plan.  Plaintiff's complaint is that the recovery plan is insufficient because it does not designate the area north of the highway as critical habitat.  As noted above, the contents of the plan are discretionary, as evidenced by the language "to the maximum extent practicable."

*Id*.  The court found the plaintiffs lacked standing to enforce the provisions of the Act under the citizen-suit provision, which authorizes suits for an alleged failure to perform an act or duty "which is not discretionary with the Secretary."  *Id*. at 432.

The Massachusetts district court similarly found "the content of recovery plans is discretionary." *Strahan v. Linnon*, 967 F. Supp. 581, 597 (D. Mass. 1997).  The court offered two justifications.  The first was the majority view that recovery plans are not binding but merely provide guidance to the federal agencies.  *Id*.  The Eleventh Circuit has held the language of 16 U.S.C. § 1533(f) "makes it plain that recovery plans are for guidance purposes only" and that "[b]y providing general guidance as to what is required in a recovery plan, the [Act] 'breathe[s] discretion at every pore.'" *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 548 (11th Cir. 1996)(quoting *Strickland v.*

*Morton*, 519 F.2d 467, 469 (9th Cir. 1975)).  The Ninth Circuit reached a similar conclusion in *Conservation Congress v. Finley*, 774 F.3d 611, 614 (9th Cir. 2014), explaining that "Recovery Plans are prepared in accordance with section 1533(f) of the Endangered Species Act for all endangered and threatened species, and while they provide guidance for the conservation of those species, they are not binding authorities."

The second justification was the clear finding in *Morrill* that "'contents of [recovery] plans are discretionary.'"  *Strahan*, 967 F. Supp. at 597 (quoting *Morrill*, 802 F. Supp. at 433.)  The court explained:

> While it is true that [§ 1533(f)] "does not permit an agency unbridled discretion," and "imposes a clear duty on the agency to fulfill the statutory command to the extent that it is feasible or possible," the requirement does not mean that the agency can be forced to include specific measures in its recovery plan.  In fact, all that is required in a recovery plan is "the identification of management actions necessary to achieve the Plan's goals for the conservation and survival of the species."

*Strahan*, 967 F. Supp. at 597 (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 107 (D. D. C. 1995).  The court did not address the viability of plaintiff's claims under the citizen-suit provision.

The cases make clear once a species is listed as endangered or threatened under the Act, the Secretary has a mandatory duty under § 1533(f)(1) to determine whether a recovery plan would promote the conservation of such species.  If he determines a recovery plan would promote conservation, he then has a mandatory duty to develop and implement such plan.  The cases also make clear the general content of a recovery plan is discretionary based on the definition of the term "conservation" and the non-binding nature of the plan.  Accordingly, the court lacks jurisdiction under the citizen-suit provision of the Act with regard to any claim challenging the general substance of a recovery plan.  What is not entirely clear is the Secretary's duty to incorporate the three items

identified in § 1533(f)(1)(B) in a recovery plan.

Section 1533(f)(1)(B) provides:

The Secretary, in developing and implementing recovery plans, shall, to the maximum extent practicable –

(B) incorporate in each plan –

(i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;

(ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and

(iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

This language is substantially similar to that found in § 1533(f)(1) – the Secretary shall develop and implement a recovery plan unless he finds that such plan will not promote conservation – and should be construed consistently. With this in mind, the court finds the Secretary has a mandatory duty to determine whether incorporation of the three items identified in § 1533(f)(1)(B) is practicable and, if so, incorporate each item in the recovery plan. However, the Secretary has discretion to make the threshold determination of whether incorporation is practicable[2] as well as the subsequent determination of how each of the identified items will be addressed. This construction recognizes the discretion of the Secretary to determine the practicability of including the designated items and

---

[2]*See Sw. Ctr. for Biological Diversity v. Babbitt*, No. 98-372 TUC JMR, 1999 WL 33438081, *6 (D. Ariz. Sept. 3, 1999)(court has jurisdiction pursuant to the Act's citizen-suit provision to determine whether Secretary "failed to fulfill his duty to incorporate 'to the maximum extent practicable' delisting criteria and objectives" but must defer to Secretary's discretion the determination of whether it was practicable to incorporate objective, measurable delisting criteria.)

manner in which the items will be addressed, in conjunction with the mandatory obligation to incorporate the items where practicable, and is consistent with the majority of the relevant cases.

Plaintiffs argue courts have previously reviewed the substance of recovery plans in finding an agency acted arbitrarily and capriciously. The court finds these cases inapplicable to the issues at hand. In *Babbitt*, the parties did not argue, and the court did not consider, the viability of a citizen-suit challenging a recovery plan under 16 U.S.C. § 1540(g)(1)(C). The court merely explained the actions were brought under § 1540(g) of the Act and the APA, noted claims against the Service under the Act are reviewed as agency actions under the APA, and set forth the applicable standard of review for actions under the APA. *Babbitt*, 903 F. Supp. at 105 ("Under the APA, the Court must assess whether the actions of the [Service] were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'without observance of procedure required by law.'") Similarly, in *Defenders of Wildlife v. Babbitt*, 130 F. Supp. 2d 121 (D.D.C. 2001), the court reviewed claims brought pursuant to the Act's citizen-suit provision and the APA, and applied the APA standard to all the claims, including objections to biological assessments, biological opinions, a recovery plan, and a environmental impact statement. Again, the parties did not argue, and the court did not address, the limitation on citizen suits brought pursuant to § 1540(g)(c)(1) to challenge only the failure of the Secretary to perform an act or duty under § 1533 which is not discretionary.

Plaintiffs' reliance on cases reviewing the substance of recovery plans while addressing challenges to a decision to not reclassify, or to designate and delist, a population segment are equally inapposite. The review of a decision to reclassify a species from threatened to endangered is governed by 16 U.S.C. §1533(a)(1), not § 1533(g), making *Carlton v. Babbitt*, 26 F. Supp. 2d 102 (D. D. C. 1998) irrelevant here. In *Defendants of Wildlife v. Hall*, 565 F. Supp. 2d 1160 (D. Mont.

2008), the plaintiffs challenged a decision to designate and delist a distinct population segment of the gray wolf under 16 U.S.C. §§ 1533(a) and 1536.  Not only was the *Hall* court considering the challenge under provisions other than § 1533(f), the citizen-suit provision of the Act relevant is limited to actions taken under § 1533.  Consequently, any review of a recovery plan in *Hall* is immaterial to this matter.

Finally, Plaintiffs rely on consideration of recovery plan by the Southern District of California court with regard to a challenge to an incidental take permit issued under 16 U.S.C. § 1539.  *Sw. Ctr. for Biological Diversity v. Bartel*, 470 F. Supp. 2d 1118 (S. D. Cal. 2006).  Needless to say, the review of a recovery plan under a provision other than 1533(f) to which § 1540(g)(1)(C) does not apply does not provide this court with any meaningful precedent on the issue before it.

The court has found the Secretary has a mandatory duty under § 1533(f)(1)(B) to determine whether it is it practicable to incorporate the three delineated items into a recovery plan and, if so, incorporate each item in the recovery plan.  Accordingly, the court has jurisdiction under § 1540(g)(1)(C) to consider challenges to the Secretary's failure to include these items.  However, the matter in which the Secretary addresses these items is discretionary and beyond the purview of the court. Applying these findings to the allegations of the Complaint, the court finds it lack jurisdiction under the citizen-suit provision of the Act to review Plaintiffs' First through Eighth Claims for Relief.

The their first eight claims for relief, Plaintiffs generally allege the Plan fails to comply with § 1553(f), which requires the Agencies to develop a recovery plan that incorporates the three items identified in § 1533(f)(1)(B).  Plaintiffs then allege specific deficiencies in the Plan but do not identify how such deficiencies violate the requirement to include the identified items.  In the absence

of such allegations, the Complaint fails to state a claim for violation of a non-discretionary duty.

Accordingly, the court lacks jurisdiction over Plaintiffs' claims under the citizen-suit provision.

The same conclusion results when considering the specific allegations of each of the first eight claims.    In their First Claim for Relief, Plaintiffs object to the Plan's allowance for the extirpation of twenty-five percent of specified bull trout population segments.  Plaintiffs identify this allowance as a management choice which the Agencies fail to explain to Plaintiffs' satisfaction. (Compl. ¶ 42.)  Here, Plaintiffs are complaining about the substance of the Plan by disagreeing with the Agencies' conclusion and the underlying explanation.  As such, Plaintiffs are complaining about the Agnecies' determination of how best to provide for the conservation and survival of the bull trout, an area clearly within the Agencies' discretion.

In their Second Claim for Relief, Plaintiffs allege the Plan's recovery goals, objectives, and criteria are inconsistent with, and fail to incorporate relevant provisions in, the Agencies' Interim Recovery Planning Guidance 2010, Bull Trout Recover: Monitoring and Evaluation Guidance 2008, and 2010 Bull Trout Critical Habitat Final Rule.  While this claim references one or two of the items delineated in § 1533(f)(1)(B), it does not allege such items were not addressed in the Plan, but rather that the Plan's handling of such items was inconsistent with other documents created by the Agencies.  The Agencies' interpretation and application of these documents with regard to the condition of the bull trout in 2016 and the actions necessary to protect the species future viability is clearly within the Agencies' technical knowledge and skill described in *Norton* as the "hallmark" of discretionary duties.

The Third Claim for Relief is based on the Agencies' failure to include important demographic information in the Plan while the Fourth Claim for Relief alleges a failure to include

habitat metrics in the Plan.  Plaintiffs allege the Plan relies on the Agencies' "perception of whether identified threats have been 'managed'" and "erroneous assumptions," "discards a large body of scientific literature," and "lacks critical examination or disclosure about . . . the effects of threats or their treatment on habitat and population viability."  (Compl. ¶¶ 56, 58, 64.)  The Agencies' perception and assumptions with regard to, and examination of, the proper methods for the conservation and survival of the bull trout fall directly within the Agencies' discretion.  Plaintiffs contend the Agencies's conclusions are poor and not properly supported.  These challenges are not actionable under the citizen-suit provision of the Act.

Plaintiffs' allegations the Agencies discarded a large body of scientific literature may be an attempt to state a claim based on the Agencies' failure to base the Plan on the best scientific evidence available.  In their Complaint and opposition briefing, Plaintiffs assert recovery plans must be based on the best science available, citing *Babbitt* as authority.  The jump cite provided by Plaintiffs does not contain a discussion of the science required in recovery plans or a holding that recovery plans must be based on the best science available.  Rather, the *Babbitt* court merely summarized and discussed the plaintiff's arguments with regard to best scientific evidence available without finding such a requirement existed.  *See Babbitt*, 903 F. Supp. at 114.  While § 1533(b) expressly provides the Secretary shall make the listing determinations and critical habitat designations required by § 1533(a)(1) and § 1533(a)(3) "solely on the basis of the best scientific and commercial data available to him," the language of § 1533(f) does not impose a such a requirement with regard to the development and implementation of recovery plans and the court will not impose one.  As noted in *Norton*, a challenge based on the Secretary's failure to use solely the best scientific evidence available would likely fail.  The court explained: "Unlike 16 U.S.C. § 1533(b), section 1533(f),

which regulates recovery plans, does not explicitly require that determinations be based an the best scientific and commercial data available. 'When certain statutory provisions contain a requirement and others do not, we should assume that the legislature intended both the inclusion and the exclusion of the requirement.'" *Norton*, 2006 WL 167560, at *2 n.1 (quoting *Stewart v. Ragland*, 934 F.2d 1033, 1041 (9th Cir. 1991).

The Agencies' failure to "effectively or objectively" evaluate threats is the claim asserted in the Fifth Claim for Relief. This is clearly a challenge to the content of the Plan, an area within the Agencies' discretion, and not a failure by the Agencies to address the items identified in § 1533(f)(1)(B). Accordingly, the court lacks jurisdiction under the citizen-suit provision of the Act over this claim.

In their Sixth Claim for Relief, Plaintiffs complain about the Plan's reliance on vaguely defined monitoring and adaptive management regimes. This claim also appears to allege the Plan is not is not based on the best scientific and commercial data available, a requirement that does not apply to recovery plans under the express provisions of the Act or the authority relied upon by Plaintiffs.

The Seventh Claim for relief alleges the Plan fails to provide clear operational guidance with regard to threat management. Operational guidance on threat management is not one of the required items identified in § 1533(f)(1)(B). The Agencies' conclusions with regard to this issue, and the clarity of Plan's handling of the issue, is within the Agencies' discretion.

Finally, Plaintiffs allege the Plan does not adequately address the effects of climate change on the cold water habitat required for the survival of bull trout in their Eight Claim for Relief. This claim arguably relates to the requirement the Plan provide a "description of such site specific

management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species." 16 U.S.C. § 1533(f)(1)(B)(i). However, Plaintiffs' claim implies the Agencies addressed the requirement, just not in a manner satisfactory to Plaintiffs. The Agencies performed their mandatory duty to describe specific management actions. The content of the management actions, and the extent to which Agencies address each action, are within the discretion of the Agencies and not subject to challenge under the citizen-suit provision of the Act.

The court finds Plaintiffs' first eight claims for relief challenge the content of the Plan which is within the Agencies' discretion. The citizen-suit provision of the Act allows private citizens to commence actions to challenge the Secretary's failure to "perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." Consequently, this court lacks subject-matter jurisdiction over Plaintiffs' first eight claims for relief, which are brought under the citizen-suit provision of the Act. Defendants are entitled to dismissal of these claims.

## II. The APA

In the Ninth Claim for Relief, Plaintiffs' alternatively seek review under the APA, alleging the Service "has failed to consider relevant factors, failed to articulate a rational connection between the facts found and the decision made, and/or failed to follow applicable policy." (Compl. ¶ 87.) Plaintiffs contend the Agencies' actions were "arbitrary, capricious or an abuse of discretion." (Compl. ¶ 86.) Defendants' argue the court lacks jurisdiction under the APA based on the discretionary nature of the challenged items and the non-binding nature of a recovery plan.

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA does not allow judicial review of agency actions to the extent a

statute precludes such judicial review[3] or where the challenged agency action is committed to agency discretion by law.  5 U.S.C. § 701(a).  Additionally, only "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  As a general matter, there is a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001), *superseded by statute on other grounds* (citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 670 (1986) (additional citations omitted)).

A.  *Agency Discretion*

The general exception to reviewability for agency actions committed to agency discretion by law is a narrow one.  *Heckler v. Chaney*, 470 U.S. 821, 838 (1985).  The exception applies only when Congress has deemed certain agency actions to be discretionary and enacted statutes which provide a court "no meaningful standard against which to judge the agency's exercise of [such] discretion.  In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgement absolutely." *Id*. at 830.  Put another way, judicial review of agency action is not available "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Webster v. Doe*, 486 U.S. 492, 599 (1988)(quoting *Citizen to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971).  "[I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Heckler*, 470 U.S. at 830.  However, "[e]ven where statutory language grants an agency 'unfettered discretion,' its decision may

---

[3]"Nothing in the [Act's] citizen-suit provision expressly precludes review under the APA, nor do we detect anything in the statutory scheme suggesting a purpose to do so." *Bennett*, 520 U.S. at 175.

nonetheless be reviewed if regulations or agency practice provide a "'meaningful standard' by which this court may review its exercise of discretion.'" *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003)(quoting *Socop-Gonzalez v. INS*, 208 F.3d 838, 844 (9th Cir. 2000)).

While the court has determined the actions challenged by Plaintiffs are within the Agencies' discretion and not actionable under the citizen-suit provision of the Act, it is not convinced this is one of those rare instances in which the court lacks a meaningful standard to review the exercise of this discretion. The express purpose of the Act, and the requirement that certain information be incorporated into a recovery plan to the maximum extent practicable, may provide the requisite meaningful standard to review the Secretary's exercise of discretion. However, because the court finds the Plan was not a final agency action, it need not definitively resolve this issue.

B. *Final Agency Action*

"As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (internal citations omitted). When determining whether an agency action is final, courts must "focus on the practical and legal effects of the agency action" and look to whether the action "amounts to a definitive statement of the agency's position" or if "immediate compliance [with the terms] is expected." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)(citations omitted).

"Recovery plans are prepared in accordance with section 1533(f) of the [Act] for all endangered and threatened species, and while they provide guidance for the conservation of those

species, they are not binding authorities." *Conservation Cong.,* 774 F.3d at 614.  Additionally,

recovery plans are not mandatory.  "The [Act] does not mandate compliance with recovery plan for

endangered species." *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1114 n.8 (9th

Cir. 2015)(citing *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 547-48 (11th Cir. 1996).  The District

of Columbia Circuit approved of the Service's analogizing "a recovery plan to a map or set of

directions that provide objective and measurable steps to guide a traveler to his destination." *Friends*

*of Blackwater v. Salazar*, 691 F.3d 428, 434 (D.C. Cir.  2012).  The court reasoned:

> Although a map may help a traveler chart his course, it is the sign at the end of the
> road, here the five statutory factors indicating recovery, and not a mark on the map
> that tells him his journey is over.  Moreover, as with a map, it is possible to reach
> one's destination – recovery of the species – by a pathway neither contemplated by
> the traveler setting out nor indicated on the map.

*Id*.

The Plan does not determinate any rights or obligations and does not require any immediate

compliance with its terms.  Rather, the Plan merely describes management actions; objective and

measurable criteria; and time and cost estimates the Secretary believes "may be necessary to achieve

the plan's goal for the conservation and survival of the species."  16 U.S.C. §1533(f)(1)(B)(i).  A

recovery plan is not a final agency action.  *See Stout v. U.S. Forest Serv.*, Civil No. 09-152-HA, 1022

WL 867775, at *6 (D. Or. March 10, 2011)(citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

726, 729-30 (1998)) ("A management plan should not be considered final agency action if it merely

sets goals and methods, and does not authorize specific conduct.")  Consequently, the Plan is not a

"final agency action for which there is no other adequate remedy in a court" and Plaintiffs are unable

to seek judicial review of the Plan under the APA.

/ / / / /

Page 25 - FINDINGS AND RECOMMENDATION                                    *{SIB}*

*Conclusion*

Defendants' motion (ECF No. 18) should be GRANTED and the Complaint dismissed in its entirety.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **January 23, 2017**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 5th day of January, 2017.


_____ /s/ John V. Acosta _____
JOHN V. ACOSTA
United States Magistrate Judge